November 10, 2023

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DR. HAROLD R. WANLESS,**<br>1300 Campo Sano Ave, Coral Gables, FL 33146<br><br>                                           **Petitioner,**<br><br>**JANET YELLEN, SECRETARY** in her official<br>    capacity<br>**U.S. DEPARTMENT OF THE TREASURY**<br><br>**FINANCIAL STABILITY OVERSIGHT COUNCIL**<br>1500 Pennsylvania Ave., NW, Wash., DC  20220<br>                                           **Respondents.** | Civil Action No. _____<br><br>**MOTION FOR A HEARING;<br>REQUEST FOR DECLARATORY JUDGMENT** |

# Motion for Injunctive & Declaratory Relief Hearing & Order for Settlement Conference with Magistrate Judge

# Immediate and Permanent Injunctive Relief are Warranted, and a Hearing of the Parties Before This Court.

Rule 65 for a Hearing pursuant to the Rules of Civil Procedure is satisfied for the following reasons set forth in this Motion, by Defendant's 16 months of bad faith refusal to act or communicate, including its position on this Motion in violation of this Court's rules, on a well-documented imminent threat to U.S. financial stability.  Defendant's complete stonewall caused this lawsuit despite nine written and oral communications including the 30-Day Notice to Defendant, and by the Chairman of the statutory Inspector Generals' Oversight Council on Financial Stability and former Idaho Attorney General and Supreme Court Chief Justice.  Rule 57 on Declaratory Judgment also empowers this Court to conduct a hearing in addition to this Court's equitable powers:  *"The Court may order a speedy hearing of a declaratory judgment action*.*"*  The Request for Declaratory Judgment is part of the pleadings of this lawsuit.

# There is Demonstrated Likelihood of Imminent Irreparable Harm.

1.  Summarizing from the Aug. 31, 2023 30-Day Notice to Defendant and the Request for Declaratory Relief that are part of this lawsuit's pleadings, there is an imminent threat to U.S. financial stability. This well-documented threat from rapidly accelerating sea level rise flooding is based on 29 years of NASA Jet Propulsion Laboratories (JPL) and EU ice-penetrating aerial imagery of *"explosive and disturbing"* glacial melt as stated by NASA JPL, requiring protections from 2' of sea level rise flooding and 10' of storm surge by 2030 codified to preserve commerce and national security.  In 2020, S&P threatened to downgrade Florida's credit rating if the protective financing was not deployed for this imminent threat, but the State has not acted. (FL 2021 Debt Report at 5). Figures 1-5 in the Request for Declaratory Relief and the 30-Day Notice contained in the pleadings of this lawsuit, visually show this unprecedented imminent and highly destructive economic threat without rapidly deployed flooding protections.

2.  **Time is of the essence to act.**  At any time now, about $1 trillion of South Florida Coastal real estate can be completely devalued, triggering massive litigation by the permanent mortgage holders to recover the value, very similar to financial contagion from Subprime Mortgage litigation that triggered the 2008 Financial Crisis as determined by the Financial Crisis Inquiry Commission.  The market is aware of this imminent threat and lack of protective financing, with the developer leader of the South Florida Urban Land Institute, calling it *"a grenade to South Florida's economy."*  "New South Florida Climate Change Financial Report: Spend Billions Or Lose Much, Much More," WUSF Public Media - WUSF 89.7 | By Alex Harris - Miami Herald, Published October 17, 2020 at 8:00 AM EDT.  The Urban Land Institute is the Florida, U.S., and global expert leaders in real estate finance and climate resilience.  Defendant publicly announced at its website that this threat exists, as was also stated by the global Financial Stability Board that Defendant is a member of.  Accordingly, there is no market confidence in a solution which is the trigger for financial contagion almost identical to the Subprime Mortgage cause of the 2008 Financial Crisis.

3.  South Florida's porous bedrock prevents permanent engineering solutions, and causes the flooding at both the tidal surface and upwelling from below the ground.  An estimated $90 billion in South

Florida protections are required now to be rapidly deployed to extend the South Florida coastal real estate life to prevent imminent, complete coastal real estate devaluation and financial contagion.

4. For the past 16 months Defendant has refused its top and non-discretionary statutory duty to protect U.S. financial stability by rapidly deploying the over $60 trillion in available private sector assets to pay for protections through Defendant's publicly-announced high priority private sector financing program or equivalent. During this time, Defendant was repeatedly notified of this financial stability threat and available solution including by the 30-Day Notice, but in bad faith refused to act or communicate at all including as set forth in Attorney's Declaration / Affidavit and Motion for $622,645 in Attorneys Fees that are part of the pleadings of this lawsuit. In addition to the 30-Day Notice, these requests included to the responsible Treasury officials, a July 8-23, 2022 written inquiry to Defendant by Rich Delmar, Chairman of the statutory Inspectors General Oversight Council on Financial Stability, and a Sept. 21, 2023 email by Jim Jones, former Idaho Attorney General and Supreme Court Chief Justice. Defendant's long term, complete, bad faith Stonewall regarding Defendant's non-discretionary, top statutory duty is the only reason Petitioner is before this Court.

5. Petitioner demonstrated that there is *"a real and immediate threat of future injury by the defendant."* City of Los Angeles v. Lyons, 461 U.S. 95, 107 n. 8 (1983).

6. The test for permanent injunctive relief is imminent irreparable harm that cannot be cured without judicial intervention, and is within the equitable powers of the court, Zuckerman v. USPS, D.C. Cir. No. 21-5283 (Apr. 14, 2023):

> *"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Similarly, "the district court's decision whether to grant declaratory judgment is reviewed for abuse of discretion." Jackson v. Culinary Sch. of Wash., Ltd., 59 F.3d 254, 255 (D.C. Cir. 1995)."*

*Zuckerman* also provided the purpose of injunctive relief and the four qualifying factors extent in this lawsuit:

> *"As the Supreme Court explained in United States v. W. T. Grant Co., 345 U.S. 629 (1953):*
>
> *The purpose of an injunction is to prevent future violations, and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The [District Court's] decision is based on all the circumstances; [the District Court's] discretion is necessarily broad and a strong showing of abuse must be made to reverse it."*

*****

"A plaintiff seeking a permanent injunction "must satisfy a four-factor test before a court may grant such relief." eBay, 547 U.S. at 391. The plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Id. When the defendant is the government, factors (3) and (4) merge. Nken v. Holder, 556 U.S. 418, 435 (2009)."

7. The imminent irreparable injury suffered by Petitioner is the severe destruction of South Florida's coastal economy, and Petitioner's concomitant household net worth as a Coral Gables resident. Petitioner and the public will also suffer severe financial harm from contagion which is expected by this complete devaluation of South Florida coastal real estate. As shown by the 2008 Financial Crisis, contagion and economic destruction can continue for years, and once it starts, it can in this instance be permanent without a Climate Crisis solution. If Treasury acts after the fact as a continuing violation of Dodd-Frank, it will be too late and there may never be recovery. To that end, just 2030 U.S. sea level rise flooding protection costs are calculated at $5 trillion which was not disputed as a contingent liability of the American Petroleum Institute in its recusal from voting in preliminary decisionmaking on the approved 3.0 national consensus resilience standard. Massachusetts calculated sea level rise flooding protection costs are $326 billion. Massachusetts Partial Resilience Damage Costs (Capital Markets Partnership 2019). Thus, the injury is existing. The purpose of Dodd-Frank's financial stability mandates upon Treasury are *to prevent* U.S. financial instability. Even without intractable accelerating sea level rise flooding, the 2008 Financial Crisis destroyed $20 trillion of U.S. household net worth and likely the same or more for business. Chapter 15, The Financial Crisis and Great Recession, Macroeconomics in Context, Second Edition, Neva Goodwin et al., at 337 (2014 Tufts University), and Life of a Debt: Data Integrity in Debt Collection, An FTC – CFPB Roundtable, Robert M. Hunt, PhD, Vice President and Director, Payment Cards Center, Federal Reserve Bank of Philadelphia, page 3, June 6, 2013).

8. **There is no adequate, or even discernable, remedy at law** to the South Florida and U.S. economies and Petitioner, for this imminent, irreparable economic harm of an unprecedented nature, scope, and consequential very large size. Defendant has plenary authority to adequately remedy the imminent irreparable harm with its private financing program with over $60 trillion available, but over the last 16 months will neither act nor communicate at all. Due to political chaos that caused the recent downgrade of the United States' credit

rating, Congress will not appropriate the funds. Further, on September 22, 2022, White House Climate Envoy John Kerry finally announced that the governments of the world neither have the will nor money to solve the Climate Crisis. "In Pittsburgh, John Kerry says climate change solutions will be driven by private sector." NPR State (Sept. 22, 2022). The Supreme Court recently greenlighted some 30 State and City climate cost recovery suits with the most recent being California's, but the timing of any recovery is uncertain.

9. **There is no hardship to Defendant** in executing its announced high priority, private climate financing program or equivalent, to protect U.S. financial stability, including as offered with the Urban Land Institute and the private sector where the funds are available with higher-credit rated financing providing cheaper capital and higher property appraised value with no taxpayer funds required:

- Treasury's high priority private sector climate financing program can ensure U.S. financial stability as stated by Treasury to: "***Bring to bear the full force of the Treasury Department … leveraging finance … to confront the threat of climate change.***" (emphasis by Treasury) in Exhibit 2 to the 30-Day Notice. Secretary Yellen stated in the announcement *"Climate change requires economy-wide investments by industry … as well as actions to … mitigate climate-related risks to households, businesses, and our financial sector."* (Apr. 19, 2021)

In steep contrast, the hardship to South Florida's economy and Petitioner is severe and potentially permanent. There is no coastal South Florida economy if it is inundated and literally under sea water. There is no ongoing or planned abandonment and retreat inland of this highly-developed coastal real estate.

10. **The public interest would not be disserved by a permanent injunction.** It is foremost in the public interest that Treasury execute its high priority private sector financing program now or equivalent, to prevent imminent South Florida financial contagion from the very likely complete devaluation of South Florida Coastal real estate.

# There is a Demonstrated Likelihood of Success on the Merits of the Underlying Cause of Action.

11. There is nothing discretionary in Dodd-Frank about Treasury's top statutory duty to maintain U.S. financial stability, and that of the Dodd-Frank Financial Stability Oversight Council (FSOC) that Treasury Chairs. That is the key purpose of Dodd-Frank: *"To promote the financial stability of the United States."* An

5

Act. HR 4173 at 1, (Jan. 5, 2010), Dodd-Frank Wall Street Reform and Consumer Protection Act. Treasury's mandatory statutory duty to preserve U.S. financial stability is reviewable. Treasury made it clear as Chair of FSOC that Dodd-Frank requires it to act in this instance: *"Established under the Dodd-Frank Wall Street Reform and Consumer Protection Act, FSOC is charged with identifying risks to U.S. financial stability, promoting market discipline, and responding to emerging threats to the stability of the U.S. financial system."* 30-Day Notice Ex. 2. Treasury by its own words of statutory construction unequivocally asserts its duty to respond to such emerging threats to U.S. financial Stability. The law is clear that this mandatory, non-discretionary Treasury statutory duty is reviewable by this Court:

> *"If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984). "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Id. at 843 n.9. Therefore, "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Id."*
>
> From 2023 Post Publication Update at 196 for *FEDERAL STANDARDS OF REVIEW*, prepared by Harry T. Edwards, Senior Circuit Judge U.S. Court of Appeals for the D.C. Circuit

Petitioner has found no precedent for this unacceptable stonewall placing about $1 trillion of coastal South Florida real estate at risk of being completely devalued with the threat to many $trillions of household net worth like the 2008 Financial Crisis where $20 trillion of household net worth was destroyed.

12.  There is no political question preventing judicial resolution of Treasury inaction since Dodd-Frank provides Treasury plenary authority and the responsibility to act to preserve and protect U.S financial stability. Further, there is no issue of liability of responsible parties that would require additional Congressional authority. There many $trillions of private sector financing available by investors ready to deploy through available higher-credit rated bonds to provide flooding protections.

## Request for a Hearing

**13.  A hearing need is demonstrated by Petitioner's Attorneys' Declaration as part of the pleadings showing Defendant's bad faith stonewall of any communications on this matter for 16 months.**

This stonewall unnecessarily increased without any good faith cause, the unacceptable imminent threat to U.S. financial stability that can happen at any time by accelerating sea level rise flooding, as publicly stated by Defendant memorialized in the Request for Declaratory Judgment and 30-Day Notice at ¶¶ 8 & 18 in these pleadings of this lawsuit, e.g., *"As climate change intensifies, natural disasters and warming temperatures can lead to declines in asset values that could cascade through the financial system. … These impacts are not hypothetical. They are already playing out."* Remarks of Secretary Yellen to the Financial Stability Oversight Council (FSOC) (Mar. 7, 2023) published on the Treasury website.

14. **Defendant's longstanding stonewall of any communication completely defeats compliance with this Court's LCvR 7(m) Motions' requirement — Duty to Confer with Opposing Counsel** on this Motion:

> *"(m) DUTY TO CONFER ON NONDISPOSITIVE MOTIONS.*
>
> *Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."*

15. Was there a rational basis for Defendant's longstanding stonewall, on a matter of imminent importance to U.S. financial stability? In a conference call, Petitioner's attorneys asked Treasury attorney Mark Schlegel in the General Counsel's Office with climate responsibility, the following questions identified in Petitioner's Attorney's Sept. 16, 2023 Declaration / Affidavit that is part of these pleadings, which Schlegel refused to answer at all:

- *Did you receive the 30-Day Notice given that you previously provided your email address to Petitioner's counsel for this purpose?*

- *Why are you acting contrary to Treasury Order 107-04 that the General Counsel's Office accepts service?*

- *Why can you not discuss at all the documented imminent threat to U.S. financial stability and a possible remedy so the parties do not become adversarial and waste this Court's valuable time and resources?*

- *Who is the responsible official in the General Counsel's Office for this matter?*

What were the reasons for Defendant's Stonewall over 16 months on a recognized financial stability threat?

7

- Was Schlegel's highly unusual and inappropriate behavior very likely because he was instructed to continue the stonewall? If so, who instructed him to do this and why?

- Was he concerned that such instruction would jeopardize the public interest and U.S. financial stability?

- Was he concerned on how such instruction could lead to severe economic harm?

- Did he question what Treasury or the Administration would gain from such instruction?

- Did he see any public interest rational basis to such instruction?

- Was such instruction purely political, discounting the very likely severe economic harm, and thus contrary to the public interest?

- What was Treasury's planned response if any, for the imminent financial contagion?

- Was any thought given to how financial contagion and Treasury's long term stonewall would be justified to the courts, Congress and the public?

- Was any consideration given to the Combined Intelligence Agencies' 2023 National Security Threat Assessment identifying such climate threats as a major threat to U.S. national security?

- Was there an appropriate national security threat response available and should it have been executed?

- Was there any consideration to using available Climate Crisis emergency powers?

- Was there any discussion of possible, available remedies?

- Did he question whether he should withdraw from his role as improper conduct for a licensed attorney and likely outside his scope of work?

- Was such instruction lacking in any nefarious purpose but simply due to no or very limited Treasury internal qualifications to competently address the imminent threat, and lack of judgment to seek assistance?

16.     **Pursuant to this Court's Local Rules 7(f) and 65(1)(d), an oral hearing is requested** so the parties' attorneys can finally communicate on this matter of substantial economic consequence, entirely precluded by Defendant's complete stonewall for 16 months to Petitioner's attorneys. Local Rule 65(1)(d) allows Petitioner to request this hearing based on the facts in this Motion, which Petitioner believes makes Hearing expedition essential. More detailed facts and Figures are in the Request for Declaratory Judgment and 30-Day Notice part of the pleadings of this lawsuit. Live testimony is not requested, simply an opportunity for the attorneys to communicate before the Court to facilitate an informed decision on this unprecedented matter adversely affecting U.S. financial stability. In the 30-Day Notice to Defendant, available solutions were offered

which could be executed now without wasting the Court's time and resources. As explained to Defendant's attorney who continued the stonewall, Petitioner believes this matter needn't be adversarial and could be settled if there is communication between the parties. An intentional, bad faith complete lack of communication by a party in a matter for over one year is highly unusual and Petitioner believes warrants a hearing to ensure communications as required by this Court's rules, that could effectively and efficiently resolve this dispute, advance the public interest and preserve U.S. financial stability. Given these unusual and consequential facts, Petitioner believes a Hearing is required to comply with this Court's Standing Order in Civil Cases that the parties, counsel and Court are responsible to *"secure the just, speedy, and inexpensive determination of every action and proceeding"* in federal court. Fed. R. Civ. P. 1.

17. **Petitioner respectfully requests a settlement conference before a magistrate judge** that could effectively and efficiently resolve this dispute, advance the public interest and U.S. financial stability, and preserve this Court's highly valuable time and resources, pursuant to the §15 on Settlement in this Court's Standing Order on Civil Cases.

## CONCLUSION

Granting Petitioner's request for a hearing and settlement conference before a magistrate judge would force the communications of the parties required by this Court's Rules and facilitate settlement. A proposed order to this effect follows. Due to the long-term refusal of Defendant to communicate at all, Defendant's position on this Motion for a Hearing cannot be ascertained in order for the parties to ensure compliance with this Court's Rule. I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

*Mike Italiano*

**Mike Italiano** DC Bar #411066, Member, D.C. District Court
mts@sustainableproducts.com
4919 Ashby St., NW, Wash., DC 20007
202-298-6556
**Attorney for Petitioner & Counsel of Record**

**Attorney Advisors**
**Brian H. Davis** MN Bar #0125714

9

brianhdavis@gmail.com
651-308-7141

**Carter Jefferson Dillard** DC & CA Bar #s 492945 & 206276

Case 1:23-cv-03416-JMC   Document 4-1   Filed 11/15/23   Page 10 of 10

brianhdavis@gmail.com
651-308-7141